**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DARRYL ANDRES ESCALANTE,

Petitioner,

v.

RANDY GROUNDS, Warden,

Respondent.

NO. CV 02-7711 AHM (FMO)

**ORDER ADOPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE**

**INTRODUCTION**

On October 3, 2002, petitioner, a California state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"), pursuant to 28 U.S.C. § 2254. On February 18, 2003, respondent filed a Return to the Petition. On March 31, 2003, petitioner filed a Reply. On June 8, 2006, the Court adopted the Magistrate Judge's Report and Recommendation to bifurcate petitioner's case into two phases: (1) litigation of Grounds Two and Three in the Petition (Phase One); and (2) litigation of Ground One in the Petition (Phase Two).[1] On the same date, the Court addressed Phase One, and denied Grounds Two and Three with prejudice.

On February 27 and 28, 2007, an evidentiary hearing was held ("Evidentiary Hearing"), at

---

[1] On April 6, 2006, the Court issued an Order appointing the Federal Public Defender to represent petitioner in Phase Two. (Court's Order of April 6, 2006, at 2).

which petitioner and counsel for both parties were present. On May 18, 2007, petitioner filed a Memorandum of Points and Authorities in Support of Petitioner's [Proposed] Findings of Fact and Conclusions of Law ("Petr's Memo"). On June 20, 2007, respondent filed a Post-Evidentiary Hearing Briefing ("Resp's Memo"). On July 18, 2007, petitioner filed a Post-Hearing Reply Brief ("Supp. Reply").

On July 23, 2010, the Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that the Petition be granted as to Ground One and that an Order be issued directing respondent to release petitioner unless the State of California elects to grant petitioner a new trial within 90 days. On September 1, 2010, respondent filed Objections to the R&R ("Objections").

## DISCUSSION

In his Objections, respondent contends that: (1) petitioner failed to establish a prima facie case for a Batson[2] violation; (2) the prosecutor's reasons for striking certain jurors were not speculative; and (3) the prosecutor's reasons for striking certain jurors were not a pretext for discrimination. (See Objections at 1-10). Respondent's contentions are unpersuasive.

A. Objections Re: Step One.

Respondent contends that the Magistrate Judge impermissibly "transformed" petitioner's claim from a noncognizable class of minority women to one of black jurors. (Objections at 1). However, as the Magistrate Judge noted, petitioner raised black jurors as the cognizable group in the instant habeas proceedings. (See R&R at 22 n. 12; Petr's Memo at 11). Indeed, in raising his initial Wheeler motion at trial, defense counsel stated, "The first thing is that counsel has dismissed two potential jurors, two of them being black." (RT at 495). The defense made its second Wheeler motion after another black juror was excluded, and although that motion focused on the combined amalgam of "minority women," counsel stated, "[T]he bottom line is that there was nothing about the background of either of these people to justify kicking other than their race." (RT at 545)(emphasis added).

[2] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 (1986).

In any event, even assuming the Magistrate Judge had, sua sponte, considered whether petitioner made a prima facie case of impermissible exclusion of black jurors, respondent's objection is without merit. In Turner v. Marshall (Turner I), 63 F.3d 807, 812 (9th Cir. 1995), cert. denied, 552 U.S. 1153, 118 S.Ct. 1178, and overruled on other grounds, Tolbert v. Page, 182 F.3d 677, 681 (9th Cir. 1999), the petitioner focused on the exclusion of black men from the jury because four African-American women served on the jury. The Ninth Circuit declined to find that black males constituted a cognizable group but then, sua sponte, considered whether petitioner had "made a prima facie case of impermissible exclusion of African-American jurors as a class, with no reference to gender."

Respondent also contends that the Magistrate Judge erred in "combin[ing] statistics for Black and Latino jurors – 'minority jurors' – as evidence of statistical disparity supporting an inference of discrimination." (Objections at 2). As an initial matter, the Magistrate Judge's finding relating to the percentage of strikes against both black and Latino jurors was intended as additional evidence to support an inference of bias at step one.[3] (See R&R at 26). Further, the Magistrate Judge provided authority that supports an examination of the statistical disparities of

[3] Although respondent argues that it is improper to combine statistics of peremptory strikes used against both black and Latino jurors in evaluating whether an inference of bias has been established, (see Objections at 2), respondent also claims that the Magistrate Judge erred in failing to give sufficient weight to the combined number of black and Latino jurors that remained on the jury. (See id. at 3) ("[T]he Magistrate Judge completely discounts the fact that the final jury panel that convicted Petitioner consisted of . . . 42% Black and Latino jurors."). In any event, as the Magistrate Judge noted, although these facts are helpful, they are not dispositive. (See R&R at 25) (cases cited therein). Thus, the fact that there were black and Latino jurors on petitioner's jury and that the prosecutor had nearly half of his peremptory challenges remaining when he accepted the final panel, (see Objections at 3-4), is insufficient to refute the inference of bias at step one. See Williams v. Runnels, 432 F.3d 1102, 1109 (9th Cir. 2006) ("It is true that the prosecutor accepted the jury, including African-American members, several times before he exercised his first peremptory challenge. This, however, does not refute the inference that when the prosecutor did make peremptory challenges, he did so in a purposefully discriminatory manner as evidenced by his use of three of his first four peremptory challenges to dismiss African-American jurors. Similarly, the fact that the prosecutor did not use a peremptory challenge against an African-American juror after Williams' *Wheeler* objection is not enough in this case to refute the inference.") (italics in original); United States v. Alvarado, 923 F.2d 253, 256 (2d Cir. 1991) ("The discrimination condemned by *Batson* need not be as extensive as numerically possible.") (italics in original).

peremptory strikes against members of more than one protected group. (See id.) (citing United States v. Collins, 551 F.3d 914, 921 (9th Cir. 2009) ("Striking members of more than one protected group is also relevant and may indicate a discriminatory intent."); United States v. Alvarado, 923 F.2d 253, 255-56 (2d Cir. 1991) (finding a prima facie case because the prosecution challenged 50% of minority venirepersons – Latinos and blacks – who represented only 29% of the population of the Eastern District of New York); Fernandez v. Roe, 286 F.3d 1073, 1079 (9th Cir.), cert. denied, 537 U.S. 1000, 123 S.Ct. 514 (2002) (finding "a bare record of statistical disparities of peremptory strikes against Hispanic and African-American venirepersons[]")).

In any event, even assuming, as respondent contends, that it was improper to "combine[] two cognizable classes[,]" (Objections at 2), that would not undermine the Magistrate Judge's findings with respect to step one. There is other evidence to support the Magistrate Judge's step one findings. First and foremost, the Magistrate Judge found that two different statistics – the percentage of available black jurors challenged and the percentage of peremptory challenges used against black jurors – presented a statistical disparity that, on its own, is sufficient to make out a prima facie case at step one. (See R&R at 23-24). Further, the Magistrate Judge noted the prosecutor's failure to satisfy his burden at step two as well as the comparative juror analysis as additional evidence to support an inference of bias at step one. (See id. at 26).

Finally, respondent asserts that "the Magistrate Judge's reliance on the prosecutor's failure to proffer reasons [at step two] in this case when the trial court did not require any justification in order to support an inference of bias was improper." (Objections at 3). Respondent's assertion is unpersuasive. The Magistrate Judge did not base his decision on step one on the fact that the prosecutor did not provide his reasons for exercising his peremptory strikes to the trial judge. Indeed, the Magistrate Judge noted that because the trial court found there was no prima facie case of discrimination, the prosecutor was never required to provide the reasons for his peremptory strikes. (See R&R at 28). The Magistrate Judge based his step one findings on the record before the federal court, not the state trial court. (See id. at 26). A prosecutor's inability at an Evidentiary Hearing to independently recollect his actual reasons for striking the jurors in question may provide additional support for an inference of bias at step one. (See id.); Yee v.

Duncan, 463 F.3d 893, 899 (9th Cir. 2006), cert. denied, 552 U.S. 1043, 128 S.Ct. 653 (2007) (a prosecutor's "failure to satisfy []his burden [at step two] to produce [and explain the reason for his strike] – for whatever reason – becomes evidence that is added to the inference of discrimination raised by the prima facie showing").

In sum, "although the striking of one or two members of the same racial group may not always constitute a prima facie case, it is preferable for the court to err on the side of the defendant's rights to a fair and impartial jury." United States v. Chinchilla, 874 F.2d 695, 698 n. 5 (9th Cir. 1989). Batson's "inference" standard "was intended significantly to reduce the quantum of proof previously required of a defendant who wished to raise a claim of racial bias in the jury selection procedure[,]" and, thus, "is not onerous." Wade v. Terhune, 202 F.3d 1190, 1197 (9th Cir. 2000) (internal quotation marks and citation omitted). In short, having reviewed step one of the Batson inquiry de novo, see Williams v. Runnels, 432 F.3d 1102, 1110 (9th Cir. 2006), the Court is persuaded, based on its review of the record, that the totality of circumstances raises an inference of discrimination and, therefore, the state court erred by not advancing to step two of the Batson inquiry.

B. Objections Re: Step Two.

Respondent asserts that the Magistrate Judge incorrectly concluded that the prosecutor's stated reasons were speculative. (Objections at 4-6). Specifically, respondent asserts, with no citation to the record, that "the prosecutor's jury selection notes were provided to the court and all parties and the prosecutor used the voir dire transcript and notes to refresh his memory and reconstruct the reasons he struck the challenged jurors." (Id. at 5). Respondent's assertions are unpersuasive.

Where, as here, a lengthy interval has occurred after the actual jury selection, and the prosecutor no longer has a present recollection of his reasons, "the state may offer an explanation based on circumstantial evidence." Crittenden v. Ayers, 624 F.3d 943, 947 (9th Cir. 2012); see also Paulino v. Harrison (Paulino II), 542 F.3d 692, 700 (9th Cir. 2008) ("Evidence of a prosecutor's actual reasons may be direct or circumstantial, but mere speculation is insufficient."); Johnson v. California, 545 U.S. 162, 172, 125 S.Ct. 2410, 2418 (2005) ("The *Batson* framework

is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process.") (italics in original). The record clearly supports the Magistrate Judge's findings that what the prosecutor did here was speculate as to why he would have excused the jurors in question. (See R&R at 29-33). Although the Magistrate Judge offered the prosecutor several opportunities at the Evidentiary Hearing to clarify the record, the prosecutor testified that he had no independent or refreshed recollection of his reasons for striking the jurors in question.[4] (See 1 Reporter's Transcript of Evidentiary Hearing ("ERT") at 110, 117-18, 126-28, 131-33, 135, 137-41, 144, 147-52, 158-59, 194-95 & 200-01; 2 ERT at 5-6, 8-10, 14, 21, 23, 27, 37-39 & 50); (see also 1 ERT at 137-38 (prosecutor confirming that he did not have an independent recollection as to why he excused Juror No. 7947) & 151-52 (prosecutor confirming that he did not have an independent recollection as to why he excused Juror No. 1508)). Indeed, the prosecutor testified that, even after reading the voir dire transcript and reviewing his contemporaneous notes from the trial, he had no independent recollection of the venire members. (See 1 ERT at 117-18 ("[Question:] Now after reviewing the reporter's transcript of the voir dire or particular sections of the voir dire and your notes, do you have any specific recollection of the jurors in the trial? [¶] [Answer:] I can't say it's a specific recollection in my mind. . . . It kind of gives me a picture of who the person is, but I can't say that I remember them, the actual person."); 2 ERT at 8 (prosecutor confirming that reviewing his notes and voir dire transcript did not refresh his recollection) & 23 (same)).

In any event, respondent's contention relating to whether the prosecutor speculated as to

---

[4] Respondent cites Hardcastle v. Horn, 521 F.Supp.2d 388, 401 (E.D. Pa. 2007), for the proposition that the Court should have taken into consideration the prosecutor's general principles and strategies in determining why he exercised his challenges. (See Objections at 5). Although the prosecutor testified as to his general principles and strategies of jury selection, (see 1 Reporter's Transcript of Evidentiary Hearing ("ERT") at 125-26, 159-61 & 141-42; 2 ERT at 15), he also testified that his jury selection principles and strategies have changed over time and that he could not recall whether he used or applied any particular principle during petitioner's trial. (See 2 ERT at 37-38). Under the circumstances, there is no affirmative evidence that the prosecutor applied any of his general principles or strategies in striking any of the jurors at issue in this case. Cf. Paulino II, 542 F.3d at 701 n. 10 (Ninth Circuit "has not addressed whether a list of standard considerations, absent affirmative evidence that they were used in the particular case in question, is competent evidence of a prosecutor's actual reasons for striking certain jurors.").

his reasons for striking the subject jurors is without merit because the R&R assumed that the prosecutor's speculative reasons for striking the jurors in question were his actual reasons and concluded that the reasons were pretextual. (See R&R at 35; see also id. at 37-54).

C. Objections Re: Step Three.

Respondent raises various objections to the Magistrate Judge's factual findings and credibility determinations relating to the prosecutor's reasons for striking Juror Nos. 1508 and 1512. (See Objections at 6-9). Because, as respondent concedes, the state court used the wrong legal standard at step one of the Batson analysis, (see R&R at 20), the Magistrate Judge was required to conduct a de novo review of steps two and three. (See id. at 20 n. 10) (cases cited therein). Thus, the Court considers it highly relevant that the habeas proceedings before the Magistrate Judge, i.e., his review of the record and credibility determinations, were de novo.[5] Here, as with step two above, the Court is convinced that the Magistrate Judge's factual findings and credibility determinations are supported by the record. See Crittenden v. Ayers, 624 F.3d 943, 954 (9th Cir. 2010, as amended Nov. 2, 2010) ("Factual findings and credibility determinations that were not made by the trial court but were made by the district court after an evidentiary hearing are reviewed for clear error."); Dix v. United States, 2010 WL 3069913, at *1 (W.D. Wash. 2010) (reviewing the Magistrate Judge's credibility determination for clear error); Pakes v. Yates, 2007 WL 1655574, at *2 (N.D. Cal. 2007) (reviewing the Magistrate Judge's factual findings for clear error).

**1. Juror No. 1508**.

Before addressing respondent's contentions relating to Juror No. 1508, it is important to note that the Magistrate Judge addressed the four reasons that the prosecutor testified to during the Evidentiary Hearing for striking Juror No. 1508. (See R&R at 38-43). Respondent's Objections challenge the Magistrate Judge's findings with respect to only two of those reasons. (See Objections at 6-8). Thus, even assuming respondent's Objections had merit and those two

---

[5] It is not disputed that the state court failed to apply the correct *Batson* standard. For that reason the state court's findings are not entitled to AEDPA deference. Therefore, the holding in Cullen v. Pinholster, — U.S. —, 131 S.Ct 1388 (2011), that review under 28 U.S.C. § 2254(b)(1) is limited to the record that was before the state court at the time of its decision, is inapplicable.

reasons constituted legitimate reasons for striking Juror No. 1508, under the circumstances here that is not enough to convince the Court that the prosecutor's reasons were race-neutral. See Kesser v. Cambra, 465 F.3d 351, 360 (9th Cir. 2006) (en banc) ("A court need not find all nonracial reasons pretextual in order to find racial discrimination. [I]f a review of the record undermines the prosecutor's stated reasons, or many of the proffered reasons, the reasons may be deemed a pretext for racial discrimination.") (internal quotation marks and citation omitted) (brackets in original); see also id. at 370 (finding the existence of only one legitimate reason out of five to strike a Native American juror – the length of her commute to the courthouse – weak).

Respondent first contends that "the Magistrate Judge did not take into account the accepted jurors' additional answers during voir dire which made them differently situated than prospective Juror No. 1508." (Objections at 6-7). However, respondent does not explain what "additional answers" made the unspecified jurors differently situated. (See, generally, id.). In any event, although Juror No. 1508 was not identical in every respect to other jurors who were accepted by the prosecutor, the law does not require such a finding. See Miller-El v. Dretke (Miller-El 2), 545 U.S. 231, 247 n. 6, 125 S.Ct. 2317, 2329 n. 6 (2005) ("None of our cases announces a rule that no comparison is probative unless the situation of the individuals compared is identical in all respects, and there is no reason to accept one. . . . A *per se* rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable; potential jurors are not products of a set of cookie cutters.") (italics in original); accord Kesser, 465 F.3d at 366.

Respondent's second contention relating to Juror No. 1508 is that because she "appeared to pay more attention to her book than the jury selection process, prospective Juror No. 1508 demonstrated a 'lack of respect for the process and for the court.'" (Objections at 7) (quoting 1 ERT at 150). At the Evidentiary Hearing, the prosecutor testified that "the fact that [Juror No. 1508] was looking at a book while the jury selection process was going on, . . . would be an indicator sort of a lack of respect for the process and for the Court." (1 ERT at 150). However, as the Magistrate Judge found, the prosecutor's reasoning was based on an unfounded characterization of the record. (See R&R at 42). The record clearly supports the Magistrate

Judge's finding that the trial court's request to Juror No. 1508 to put her book down occurred immediately after the court returned from a break and prior to the resumption of jury selection. (See Reporter's Transcript ("RT") at 519). Thus, contrary to the prosecutor's and respondent's assertions, Juror No. 1508 was not reading a book during the jury selection process. Indeed, there is no indication in the record that Juror No. 1508 was not paying attention during the voir dire process. (See, generally, id. at 303-691).

**2. Juror No. 1512**.

Again, before addressing respondent's contentions relating to Juror No. 1512, it is important to note that the Magistrate Judge addressed the four reasons that the prosecutor testified to during the Evidentiary Hearing for striking Juror No. 1512. (See R&R at 46-54). Respondent's Objections challenge the Magistrate Judge's findings with respect to only two of those reasons. (See Objections at 8-9).

First, respondent asserts that Juror No. 1512 was clearly uncomfortable and nervous about hearing the case and the Magistrate Judge made "an unsupported inference from the voir dire transcript that ten of the fifteen empanel[]ed jurors were probably nervous[.]" (Objections at 8). Respondent's assertion is unpersuasive. As the Magistrate Judge noted, (R&R at 51), it was the prosecutor himself who testified that it would be normal for someone to be nervous about sitting as a juror in a murder case. (See 2 ERT at 45-48). Thus, given the prosecutor's testimony, the Magistrate Judge's observation about the likely nervousness of many other sworn jurors is a reasonable inference from the record. Moreover, the Magistrate Judge also rejected the prosecutor's nervousness explanation because it was based on a mischaracterization of Juror No. 1512's statements during voir dire. (See R&R at 52-53).

Second, respondent contends that the Magistrate Judge "seemed to rely on the prosecutor's failure to seek clarification from prospective Juror No. 1512 about her employment to support an inference of pretext. In doing so, the Magistrate Judge ignored the fact that the trial court conducted all of the voir dire questioning and the attorneys were not allowed to address the prospective jurors with questions of their own." (Objections at 8-9). Although the Magistrate Judge noted the prosecutor's failure to determine why Juror No. 1512 had changed jobs or how

long she had worked at her previous job with the California State Bar, (see R&R at 48), the Magistrate Judge ultimately rejected the prosecutor's claim that Juror No. 1512's employment for 11 months with her then current employer reflects "a lack of life experience and . . . type of values," (see 1 ERT at 143-44), because the claim "is so undeveloped that it likely falls short – especially when one considers that the prosecutor ignored the juror's previous employment with the California State Bar – of Batson's mandate for a 'clear and reasonably specific explanation of [the] legitimate reasons for exercising the challenges.' 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20 (internal quotation marks and citation omitted)." (R&R at 48). Further, there is nothing in the record indicating that counsel was prohibited from requesting that the court inquire or ask follow-up questions of the venire members. (See, generally, RT at 303-691). Indeed, the record indicates that, on a few occasions, the trial judge asked the attorneys if there were any areas about which they wanted him to ask questions. (See id. at 409-11).

## CONCLUSION

In sum, because the state court determined that petitioner had not established a prima facie case, it never required the prosecutor to provide his actual reasons for his strikes and the state court never made any findings with respect to steps two and three, i.e., there are no state court findings to presume correct on habeas review. Thus, the Magistrate Judge conducted a de novo review and made his own credibility determination of the prosecutor's explanations for striking the subject jurors. The Magistrate Judge's de novo review of "all of the circumstances that bear upon the issue of racial animosity," Snyder v. Louisiana, 552 U.S. 472, 478, 128 S.Ct. 1203, 1208 (2008), found that race was a substantial or motivating factor contributing to the prosecutor's exercise of his peremptory challenges to Juror Nos. 1508 and 1512. Under the circumstances, the Court is convinced, based on its review of the record, that the Magistrate Judge's factual findings and credibility determinations are supported by the record.

Nevertheless, this Court considers the indirect or incidental result of this analysis and ruling to be disquieting. A presumably dedicated state court prosecutor has been tarnished with a

finding of implicit bigotry, or at least invidious and unprofessional discrimination. Absent the directives and precedents of the Supreme Court, especially as applied by the Ninth Circuit, who could be confident that such a serious charge is actually warranted? After all, of the prosecutor's eleven challenges to prospective jurors, only four were to any minority (three black women and one Hispanic woman). Moreover, although the prosecutor possibly had as many as nine challenges still remaining, he accepted the panel at a point when it actually included three black women. These factors, looked at from a common sense perspective, hardly smack of racist tactics. Even more troubling are the facts that the prosecutor was never given an opportunity to explain his challenges at the trial and thus, eight years after the trial, was forced to acknowledge honestly that he could not independently recall his actual motives. Although his inability to provide an independent and contemporaneous explanation is understandable, that was a factor that entitled, if not compelled, the careful Magistrate Judge to reach the inherently damning conclusion that what the prosecutor did proffer at the 2007 hearing was pretextual.

Surely the higher courts should consider whether, in cases such as this, there is a fairer alternative to measure bias, perhaps by adopting different standards for determining the adequacy of a prosecutor's explanations in step two where so much time has elapsed since trial.

**ORDER**

Based on the foregoing and pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein, the Report and Recommendation of the United States Magistrate Judge, and the Objections to the Report and Recommendation. The Court has reviewed and made a de novo determination of the portions of the Report and Recommendation to which the Objections were directed. The Court concurs with and adopts the findings and conclusions of the Magistrate Judge. Accordingly, IT IS ORDERED THAT:

1. Judgment shall be entered granting the Petition as to Ground One.

2. Respondent is directed to release petitioner unless the State of California elects to

grant petitioner a new trial within 90 days.

3. The Clerk shall serve copies of this Order and the Judgment herein on the parties.

DATED: June 14 , 2012.

A. HOWARD MATZ
UNITED STATES DISTRICT JUDGE